1

2

3

4

5

6

**TOSTRUD LAW GROUP, P.C.**
1925 Century Park East, Ste. 2100
Los Angeles, CA. 90067
Tel: (310) 278-2600
Fax: (310) 278-2640
Email: jtostrud@tostrudlaw.com

[*Additional Counsel on Signature Page*]

7

8

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

9

10

11

12

13

14

15

16

17

18

19

20

| | |
|---|---|
| MELVYN KLEIN, ) | CASE NO.: 20-cv-3793 |
| ) | |
| Plaintiff, ) | **COMPLAINT** |
| ) | |
| v. ) | |
| ) | |
| ) | **JURY TRIAL DEMANDED** |
| Defendants, ) | |
| ) | |
| OPUS BANK, PAUL G. GREIG, ) | |
| PAUL W. TAYLOR, MARSHA ) | |
| CAMERON, MELANIE S. CIBIK, ) | |
| MARK DEASON, MAL DURKEE, ) | |
| DAVID KING, MARY E. THIGPEN, ) | |
| AND RICHARD C. THOMAS, ) | |
| ) | |

21

22

23

24

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as set forth below.

25

26

27

28

1.      This action stems from a proposed transaction announced on February 3, 2020 (the "Proposed Transaction"), pursuant to which Opus Bank ("Opus" or the "Company"), a California chartered bank, will be acquired by Pacific Premier

COMPLAINT

1   Bancorp, Inc. ("Pacific Premier"), a Delaware corporation, and Pacific Premier

2   Bank.

3        2.     On January 31, 2020, Opus's Board of Directors (the "Board" or

4   "Individual Defendants") caused the Company to enter into an agreement and plan

5   of merger (the "Merger Agreement") with Pacific Premier and Pacific Premier Bank.

6   Pursuant to the terms of the Merger Agreement, shareholders of Opus will receive

7   0.90 shares of Pacific Premier common stock for each share of Opus they own.

8        3.     On April 6, 2020, defendants filed a Form S-4 Registration Statement

9   (the "Registration Statement") with the United States Securities and Exchange

10  Commission ("SEC") in connection with the Proposed Transaction, which

11  scheduled a stockholder vote on the Proposed Transaction for May 5, 2020.

12       4.     The Registration Statement omits material information with respect to

13  the Proposed Transaction, which renders the Registration Statement false and

14  misleading. Accordingly, plaintiff alleges herein that defendants violated Sections

15  14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in

16  connection with the Registration Statement.

## JURISDICTION AND VENUE

18       5.     This Court has jurisdiction over the claims asserted herein pursuant to

19  Section 27 of the 1934 Act because the claims asserted herein arise under Sections

20  14(a) and 20(a) of the 1934 Act and Rule 14a-9.

21       6.     This Court has jurisdiction over defendants because each defendant is

22  either a corporation that conducts business in and maintains operations within this

23  District, or is an individual with sufficient minimum contacts with this District so

24  as to make the exercise of jurisdiction by this Court permissible under traditional

25  notions of fair play and substantial justice.

26       7.     Venue is proper under 28 U.S.C. § 1391(b) because a portion of the

27  transactions and wrongs complained of herein occurred in this District.

28                              **PARTIES**

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Opus common stock.

9. Defendant Opus is a California-chartered Bank and a party to the Merger Agreement. Opus's common stock is traded on NASDAQ under the ticker symbol "OPB."

10. Defendant Paul G. Greig is Chairman of the Board of the Company.

11. Defendant Paul W. Taylor is Chief Executive Officer, President, and a director of the Company.

12. Defendant Marsha Cameron is a director of the Company.

13. Defendant Melanie S. Cibik is a director of the Company.

14. Defendant Mark Deason is a director of the Company.

15. Defendant Mal Durkee is a director of the Company.

16. Defendant David King is a director of the Company.

17. Defendant Mary E. Thigpen is a director of the Company.

18. Defendant Richard C. Thomas is a director of the Company.

19. The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20. Pacific Premier is a Delaware corporation and a party to the Merger Agreement.

21. Pacific Premier Bank is a California-chartered bank, a wholly-owned subsidiary of Pacific Premier, and a party to the Merger Agreement.

## FACTS

22. Opus provides commercial and retail banking products and solutions to customers in western markets from its headquarters in Irvine, California and through over forty-five banking offices.

23. The Company offers various treasury, cash management and depository solutions, and a wide range of loan products, including commercial, healthcare,

COMPLAINT

1    media and entertainment, corporate finance, multifamily residential, commercial

2    real estate, and structured finance, and is an SBA preferred lender.

3        24.    Opus's wholly-owned subsidiary, PENSCO Trust Company, has

4    approximately $14 billion of custodial IRA assets and more than 45,000 client

5    accounts, composed of financial institutions, financial advisors and self-directed

6    investors.

7        25.    On January 31, 2020, the Individual Defendants caused the Company

8    to enter into the Merger Agreement with Pacific Premier and Pacific Premier Bank.

9        26.    Pursuant to the terms of the Merger Agreement, shareholders of Opus

10   will receive 0.90 shares of Pacific Premier common stock for each share of Opus

11   they own.

12       27.    According to the press release announcing the Proposed Transaction:

13
        Pacific Premier Bancorp, Inc. (NASDAQ: PPBI) (the "Company",
14      "Pacific Premier", "we", "us" or "our"), the holding company of Pacific
        Premier Bank, and Opus Bank (NASDAQ: OPB) ("Opus") today
15      announced they have entered into a definitive agreement under which
        Pacific Premier will acquire Opus in an all-stock transaction valued at
16      approximately $1.0 billion, or $26.82 per share, based on a closing price
        for Pacific Premier's common stock of $29.80 as of January 31, 2020.
17      Pacific Premier expects the transaction to be 14% accretive to EPS in
        2021 with a 1.8 year earnback period to tangible book value per share
18      based on anticipated cost savings of approximately 25%...
19
20      Transaction Details
21
22      Under the terms of the definitive agreement, which was approved by
        the Board of Directors of both companies, holders of Opus common
23      stock (including holders of Opus Series A preferred stock whose shares
        will be treated on an as-converted basis) will have the right to receive
24      0.90 shares of Pacific Premier common stock for each share of Opus
        common stock they own.
25
26
        Existing Pacific Premier shareholders will own approximately 63% of
27      the outstanding shares of the combined company, and Opus
        shareholders are expected to own approximately 37%.
28

4

COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The transaction is expected to close in the second quarter of 2020, subject to satisfaction of customary closing conditions, including regulatory approvals and shareholder approval from Pacific Premier and Opus shareholders. Opus directors who own shares of Opus common stock, executive officers and certain shareholders have entered into agreements with Pacific Premier pursuant to which they have committed to vote their shares of Opus common stock in favor of the acquisition. For additional information about the proposed acquisition of Opus, shareholders are encouraged to carefully read the definitive agreement, which will be filed with the Securities and Exchange Commission ("SEC").

D.A. Davidson & Co. acted as financial advisor to Pacific Premier in the transaction and delivered a fairness opinion to the Board of Directors of Pacific Premier. Holland & Knight LLP served as legal counsel to Pacific Premier. Piper Sandler & Co. acted as financial advisor to Opus and delivered a fairness opinion to the Board of Directors of Opus. Sullivan & Cromwell LLP served as legal counsel to Opus.

28.    The Merger Agreement contains a "no solicitation" provision that prohibits the Individual Defendants from soliciting alternative proposals. Section 6.07(a) of the Merger Agreement provides, in relevant part:

From the date of this Agreement through the Effective Time, neither Seller nor any of its Subsidiaries shall, and each of the foregoing shall cause their respective directors, officers or employees or any Representative retained by them not to, directly or indirectly through another Person, (i) solicit, initiate or knowingly encourage (including by way of furnishing information or assistance), or take any other action designed to facilitate or that is likely to result in, any inquiries or the making of any proposal or offer that constitutes, or is reasonably likely to lead to, any Acquisition Proposal, (ii) provide any confidential information or data to any Person relating to any Acquisition Proposal, (iii) participate in any discussions or negotiations regarding any Acquisition Proposal, (iv) waive, terminate, modify or fail to enforce any provision of any contractual "standstill" or similar obligations of any Person other than Purchaser Parent or its Affiliates, (v) approve or recommend, propose to approve or recommend, or execute or enter

COMPLAINT

into, any letter of intent, agreement in principle, merger agreement, asset purchase agreement or share exchange agreement, option agreement or other similar agreement related to any Acquisition Proposal or propose to do any of the foregoing, or (vi) make or authorize any statement, recommendation or solicitation in support of any Acquisition Proposal. . . .

29.     Section 6.07(b) of the Merger Agreement states: "In addition to the obligations of Seller set forth in this Section 6.07, Seller shall promptly (within 24 hours) advise Purchaser Parent orally and in writing of its receipt of any Acquisition Proposal."

30.     The Merger Agreement also contains a "fiduciary out" provision permitting the Board to change its recommendation of the Proposed Transaction only under limited circumstances, and gives Pacific Premier a "matching right" with respect to any "Superior Proposal" made to the Company. Section 6.02(b) of the Merger Agreement provides:

Notwithstanding the foregoing, Seller and the Seller Board shall be permitted to effect a Change in Recommendation if and only if, following the receipt of an Acquisition Proposal:

(i)     Seller shall have complied in all material respects with Section 6.07;

(ii)    the Seller Board, after consulting with its outside counsel, shall have determined in good faith that failure to do so would be more likely than not to be inconsistent with the directors' fiduciary duties under applicable law;

(iii)   the Seller Board shall have concluded in good faith, after giving effect to all the adjustments which may be offered by Purchaser Parent pursuant to clause (v) below, that such Acquisition Proposal constitutes a Superior Proposal;

(iv)    Seller shall notify Purchaser Parent, at least five (5) Business Days in advance, of its intention to effect a Change in Recommendation in response to such Superior Proposal (including the identity of the party making such Acquisition

COMPLAINT

Proposal) and furnish to Purchaser Parent all the material terms and conditions of such proposal; and

(v) prior to effecting such a Change in Recommendation, Seller shall, and shall cause its financial and legal advisors to, during the period following Seller's delivery of the notice referred to in clause (iv) above, negotiate with Purchaser Parent in good faith for a period of up to five (5) Business Days (to the extent Purchaser Parent desires to negotiate) to make such adjustments in the terms and conditions of this Agreement so that such Acquisition Proposal ceases to constitute a Superior Proposal.

31. The Merger Agreement further provides for a "termination fee" of $38,658,859 payable by the Company to Pacific Premier if the Individual Defendants cause the Company to terminate the Merger Agreement.

32. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction but it omits material information with respect to the Proposed Transaction.

33. First, the Registration Statement omits material information regarding Opus's and Pacific Premier's financial projections.

34. The Registration Statement fails to disclose the following information which was given to the Company's financial advisor Piper Sandler & Co. ("Piper"): "earnings per share estimates for Opus for the years ending December 31, 2020 and December 31, 2021 . . . as well as [the] estimated long-term annual earnings per share and asset growth rates for the years ending December 31, 2022, December 31, 2023 and December 31, 2024, as confirmed by the senior management of Opus, and estimated dividends per share for the years ending December 31, 2020 through December 31, 2024, as provided by the senior management of Opus."

35. The Registration Statement also fails to disclose other information given to Piper: the "earnings per share estimates for Pacific Premier for the years ending December 31, 2020 and December 31, 2021 . . . as well as [the] estimated

COMPLAINT

1   long-term annual earnings per share and asset growth rates for the years ending

2   December 31, 2022, December 31, 2023 and December 31, 2024, as confirmed by

3   the senior management of Pacific Premier, estimated dividends per share for the

4   years ending December 31, 2020 through December 31, 2024, as provided by the

5   senior management of Pacific Premier."

6        36.    The disclosure of projected financial information is material to

7   reasonable stockholders because it provides them with a basis to analyze the

8   projected future financial performance of the company, and allows stockholders to

9   better understand the financial analyses performed by the company's financial

10   advisor in support of its opinion that the proposed transaction is fair.

11       37.    Second, the Registration Statement omits material information

12   regarding the financial analyses performed by Piper.

13       38.    As to Piper's Comparable Company Analyses, the Registration

14   Statement fails to disclose the individual multiples and metrics for the other

15   companies used by Piper in its financial analyses.

16       39.    As to Piper's Analysis of Precedent Transactions, the Registration

17   Statement fails to disclose the individual multiples and metrics for the other

18   transactions used by Piper in its financial analyses.

19       40.    As to Piper's Net Present Value Analysis of Opus, the Registration

20   Statement fails to disclose: (a) the earnings per share estimates for Opus for the two

21   years ending December 31, 2020 and December 31, 2021; (b) the estimated long-

22   term annual earnings per share and asset growth rates for the three years ending

23   December 31, 2022, December 31, 2023, and December 31, 2024; (c) the estimated

24   dividends per share for the five years ending December 31, 2020, December 31,

25   2021, December 31, 2022, December 31, 2023 and December 31, 2024; (d) Piper's

26   reasons for applying multiples ranging from 12.0x to 17.0x to the price to 2024

27   earnings, and multiples ranging from 115% to 165% to the December 31, 2024

28   tangible book value; (e) the individual inputs and assumptions from which the

COMPLAINT

1    discount rates ranging from 9.0% to 13.0% were derived; and (f) the terminal values

2    of the Company.

3        41.    As to Piper's Net Present Value Analysis of Pacific Premier, the

4    Registration Statement fails to disclose: (a) the earnings per share estimates for

5    Pacific Premier for the two years ending December 31, 2020 and December 31,

6    2021; (b) the estimated long-term annual earnings per share and asset growth rates

7    for the three years ending December 31, 2022, December 31, 2023, and December

8    31, 2024; (c) the estimated dividends per share for the five years ending December

9    31, 2020, December 31, 2021, December 31, 2022, December 31, 2023 and

10   December 31, 2024; (d) Piper's reasons for applying multiples ranging from 12.0x

11   to 17.0x to the price to the 2024 earnings and multiples ranging from 160% to 235%

12   to the December 31, 2024 tangible book value; (e) the individual inputs and

13   assumptions from which the discount rates ranging from 9.0% to 13.0% were

14   derived; and (f) the terminal values of Pacific Premier.

15       42.    As to Piper's Pro Forma Transaction Analysis, the Registration

16   Statement fails to disclose: (a) the assumptions relating to transaction expenses,

17   purchase accounting adjustments, and cost savings, and the adjustments for CECL

18   accounting standards; (b) the earnings per share estimates for Opus and Pacific

19   Premier for the years ending December 31, 2020 and December 31, 2021; (c) the

20   estimated earnings per share growth rate for Opus and Pacific Premier for the years

21   ending December 31, 2022 and December 31, 2023; (d) the extent to which the

22   Proposed Transaction could be accretive to Pacific Premier's estimated earnings per

23   share in the four years ending 2020, 2021, 2022 and 2023; and (e) the extent to which

24   the Proposed Transaction could be dilutive to Pacific Premier's estimated tangible

25   book value per share at close

26       43.    An investment banker's endorsement of the fairness of a transaction is

27   material to stockholders as is the valuation methods used to arrive at that opinion,

28   together with the key inputs and range of ultimate values produced by those analyses,

COMPLAINT

all of which must be disclosed so as not to make the Registration Statement materially misleading.

44.     Third, the Registration Statement fails to disclose the exchange ratio proposed by Party A in February or March 2019.

45.     The failure to disclose the material information discussed above makes the Registration Statement as a whole false and misleading, as well as the following sections of the Registration Statement: (i) Background of the Merger; (ii) Opus's Reasons for the Merger and Recommendation of Opus's Board of Directors; and (iii) Opinion of Opus's Financial Advisor.

46.     The above-referenced information which was not disclosed, would have significantly altered the total mix of information available to the Company's stockholders had it been disclosed as required.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Against the Individual Defendants and Opus

47.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, requires that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

49.     Defendants issued the Registration Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement and the use of their name in the Registration Statement, which fails to provide critical

1 information regarding, among other things, the financial projections that were

2 prepared by the Company and relied upon by the Board in recommending the

3 Company's stockholders vote in favor of the Proposed Transaction.

4      50.    In so doing, Defendants made untrue statements of fact and/or omitted

5 material facts necessary to make the statements made not misleading. By virtue of

6 their roles as officers and/or directors, each of the Individual Defendants were aware

7 of the omitted information but failed to disclose such information, in violation of

8 Section 14(a). The Individual Defendants were therefore negligent, as they had

9 reasonable grounds to believe material facts existed that were misstated or omitted

10 from the Registration Statement, but nonetheless failed to obtain and disclose such

11 information to stockholders as required.

12      51.    The preparation of a Registration Statement by corporate insiders

13 containing materially false or misleading statements or omitting a material fact

14 constitutes negligence. Defendants were negligent in preparing and reviewing the

15 Registration Statement. Defendants were also negligent in choosing to omit material

16 information from the Registration Statement or failing to notice the material

17 omissions in the Registration Statement upon reviewing it, which they were required

18 to do carefully.

19      52.    The misrepresentations and omissions in the Registration Statement are

20 material to Plaintiff, who will be deprived of his right to cast an informed vote if

21 such misrepresentations and omissions are not corrected prior to the vote on the

22 Proposed Transaction. Plaintiff has no adequate remedy at law.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act

### Against the Individual Defendants

26      53.    Plaintiff repeats and realleges the preceding allegations as if fully set

27 forth herein.

28

54.     The Individual Defendants acted as controlling persons of Opus within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Opus, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Opus, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

55.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Opus, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Registration Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Registration Statement.

57.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

COMPLAINT

1    58.    By virtue of the foregoing, the Individual Defendants have violated

2    Section 20(a) of the Exchange Act.

3    59.    As set forth above, the Individual Defendants had the ability to exercise

4    control over and did control a person or persons who have each violated Section

5    14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of

6    their positions as controlling persons, these defendants are liable pursuant to Section

7    20(a) of the Exchange Act. As a direct and proximate result of Individual

8    Defendants' conduct, Plaintiff will be irreparably harmed.

9    60.    Plaintiff has no adequate remedy at law.

10   **PRAYER FOR RELIEF**

11   **WHEREFORE**, Plaintiff prays for judgment and relief as follows:

12   A.    Preliminarily and permanently enjoining defendants and all persons

13   acting in concert with them from proceeding with, consummating, or closing the

14   Proposed Transaction;

15   B.    In the event defendants consummate the Proposed Transaction,

16   rescinding it and setting it aside or awarding rescissory damages;

17   C.    Directing the Individual Defendants to disseminate a Registration

18   Statement that does not contain any untrue statements of material fact and that states

19   all material facts required in it or necessary to make the statements contained therein

20   not misleading;

21   D.    Declaring that defendants violated Sections 14(a) and/or 20(a) of the

22   1934 Act, as well as Rule 14a-9 promulgated thereunder;

23   E.    Awarding Plaintiff the costs of this action, including reasonable

24   allowance for plaintiff's attorneys' and experts' fees; and

25   F.    Granting such other and further relief as this Court may deem just and

26   proper.

27   **JURY DEMAND**

28   Plaintiff hereby requests a trial by jury on all issues so triable.

13

COMPLAINT

1

2    Dated: April 24, 2020

3

4

5                                        **TOSTRUD LAW GROUP, P.C.**

6                              By:    */s/ Jon Tostrud*
                                      Jon Tostrud
7                                     1925 Century Park East, Ste. 2100
                                      Los Angeles, CA. 90067
8                                     Tel: (310) 278-2600
9                                     Fax: (310) 278-2640
                                      Email: jtostrud@tostrudlaw.com
10

11                                    **GAINEY McKENNA & EGLESTON**
                                      Thomas J. McKenna
12                                    501 Fifth Avenue, 19th Floor
                                      New York, NY 10017
13                                    Tel:    (212) 983-1300
                                      Fax:    (212) 983-0383
14                                    tjmckenna@gme-law.com

15                                    ***Attorneys for Plaintiff***

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT